## ACTION FOR RECOVERY OF DIVIDENDS PAID OUT OF CAPITAL STOCK.

Superior Court of Cincinnati.

SIGMUND RHEINSTROM, TRUSTEE IN BANKRUPTCY OF THE BETTMAN-JOHNSON COMPANY, v. LEWIS SEASONGOOD.

Decided, January 12, 1917.

*Dividends—Action by Trustee in Bankruptcy Against a Cestui que Trust—For Recovery of Moneys Received as Pretended Dividends, But Really Paid Out of Capital.*

One who held shares of capital stock of a corporation in trust for another received payments of money as pretended dividends thereon but which he knew were really paid out of the capital of the company; *held*:

1. In an action against the *cestui que trust* to recover such moneys, the latter can not defend on the ground that he personally acted in good faith and believed the pretended dividends were paid out of earnings.

2. Neither is it a defense to such action that, at the time the payments were made, the corporation was not actually insolvent, nor

that no *then-existing* creditors were injured, it appearing that the effect of such payments was to hinder, delay and defraud subsequent creditors.

*Ben L. Heidingsfeld* and *Pogue, Hoffheimer & Pogue,* for plaintiff.

*Harmon, Colston, Goldsmith & Hoadly,* contra.

PUGH, J.

This case comes up now on the plaintiff's demurrer to the second, third and fourth defenses contained in the amended answer:

I.   It has already been decided in this case, both by this court and the United States District Court, that, on the allegations of fact appearing in the petition, this is an action at law, in *quasi*-contract, wherein the trustee seeks to recover money taken from the treasury of the bankrupt corporation by two of its officers, without the consent or authority of the corporation itself and paid over without consideration to the original defendant in the case, Lewis Seasongood, now deceased, and a general demurrer to the petition was therefore overruled.

The court is now asked to reverse its former decision on the authority of the case of *Ratcliff* v. *Clendenin,* 232 Fed. Rep., 60, recently reported.   Reference to this case shows that it relates solely to transactions wherein the corporation itself, or what is held to be the same thing, an officer exercising the functions of the corporation by the permission and acquiescence of all the stockholders, paid so-called dividends out of the capital to an individual stockholder.   The facts present no analogy to those stated in the petition in this action.   On the contrary, it is expressly alleged in this instance that the money was paid without the authority and without the consent of the corporation, and it nowhere appears in the petition, nor can it be inferred from any allegation therein, that the two officers who are alleged to have made the payments were or had ever been exercising the corporate functions with the knowledge, permission or acquiescence of those concerned.

II. The second defense states that the entire capital stock, preferred and common, was owned by the representatives of Samuel J. Jhonson, Morris L. Bettman and the original defendant herein, Lewis Seasongood, and that, from the creation of the company, November 1st, 1907, until it went out of business, August 1st, 1913, the business "was wholly managed and controlled and all its corporate powers were exercised by said Morris L. Bettman, *with the acquiescence of all the officers and stockholders of said corporation.*"

In addition, it is alleged that the aforesaid Lewis Seasongood was induced to invest $200,000 in the preferred stock of the corporation "by the representations of the said Bettman that the said corporation was prosperous and its business profitable," and received the sums of money paid him as dividends in good faith and belief that "he was lawfully entitled thereto."

There is nowhere in this second defense any denial of the allegations contained in the petition further than such as is implied in the averment above quoted as to the exercise of the corporate powers by said Bettman with the consent of all concerned. In testing the sufficiency of this defense, therefore, it must be read in connection with the allegations of the petition. Thus considered, we get the following additional allegations of fact:

1. The $200,000 of stock in question was not issued to Lewis Seasongood, but to his son, Albert Seasongood,. and remained in the name of the latter at all times;

2. Albert Seasongood, during the time of the transaction mentioned, was vice-president and treasurer of the corporation and a director thereof;

3. The payments of the pretended dividends were made to Lewis Seasongood by Albert Seasongood and Morris Bettman.

It results from the above, that Albert Seasongood held the stock as trustee for his father, Lewis Seasongood, and having been at the time the payments were made also the vice-president and treasurer and a director of the corporation, he must be presumed, at least in the absence of a positive averment to the

contrary, to have known the financial status of the company,
namely (as alleged in the petition) :

"that no dividends * * * 'had been declared or made by
the board of directors of said company; that at the dates of
the payments aforesaid, said company was heavily indebted
and there were no funds of said company out of which a divi-
dend could have been legally paid or declared; that at all times
herein complained of there were no surplus profits earned by
said company, or any moneys or funds of said company out
of which dividends could have been paid or declared legally
thereon; that said sums paid to the defendant as hereinbefore
set forth were paid out of the capital of said company and in
diminution thereof while said company 'was heavily indebted,
and were without consideration and void and in fraud of the
corporation and its creditors."

As the trustee had this knowledge, it is imputed to the *cestui
que trust*, and the fact, if such it be, that the latter did not per-
sonally have notice of the wrongdoing of his trustee is imma-
terial. The *cestui* can not be permitted to enjoy the benefits of
a wrong committed in his behalf, upon the plea that he person-
ally knew nothing of it, when it appears that his trustee com-
mitted the wrong for his advantage. The case cited by counsel
for defendant in their brief on this demurrer, *Ratcliff* v. *Clen-
denin,* 232 Fed. Rep., 60—the only case referred to and obvi-
ously the decision on which they rely—has no application to a
transaction wherein the payments of pretended dividends were
made to one who, actually or constructively, had notice of their
illegality.

Albert Seasongood, vice-president, treasurer and director of
the corporation, was also trustee of stock of the company which
he held for Lewis Seasongood; as an officer with notice of its
financial condition, he knew that the corporation, while perhaps
not actually insolvent or bankrupt, was none the less heavily
in debt; as officer aforesaid, he, with Morris Bettman and other
officers of the company, took possession of over $64,000 of the
capital and paid it to his *cestui que trust* as "pretended divi-
dends." When the corporation thereafter became bankrupt,

and the *cestui que trust* is sued by the trustee to recover this money, he defends on the ground that the other stockholders, as well as the officers of the corporation, knew of and consented to the payment; that at the time of payment, though heavily indebted, the corporation was not actually insolvent, though it is now bankrupt; and that while the corporation was forbidden by positive law to make this payment, no *then existing* creditors were injured in this particular instance, and, therefore, he ought not to be required to return the money to the representative of the bankrupt corporation.

The court, in the absence of controlling decisions, is not prepared to hold that such a defense is sufficient in law. The payments were unlawful and without consideration and made to one with notice of the facts. It may be that no *then existing* creditors were harmed, but it is impossible to say that injury was not inflicted upon those who thereafter dealt with the company upon the assumption, which they had a right to entertain, that the capital of the corporation was intact or at least had not been illegally given away to stockholders.

III. As it is admitted by counsel for the defendant that the third defense is insufficient in law, and as the court concurs in this opinion, no discussion of this defense is required.

IV. The question raised by the fourth defense as to whether there is a defect of parties defendent, has already been passed upon in this case, and, upon reflection, the court adhers to its former ruling.

It follows that the demurrer to the second, third and fourth defenses in the amended answer must be sustained.